JUDGE COTE

**15 CV 04236**

Steven A. Morelli (SM-4721)
The Law Office of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530
(516) 393-9151

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MAVIS SHEIN

        Plaintiff,

    -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, and PATRICK BURNS,
Individually and in his Official Capacity,

        Defendants.
-------------------------------------------------------------------X

RECEIVED
JUN 02 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**VERIFIED
COMPLAINT**

*Jury Trial Demanded*

      Plaintiff MAVIS SHEIN, by and through her attorneys, THE LAW OFFICE OF
STEVEN A. MORELLI, P.C., respectfully alleges, upon knowledge as to herself and her own
actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Mavis Shein, a Jewish female, dedicated her entire thirty (30) year professional
   life to helping children learn, first as an elementary grades teacher and later as a middle
   school English Language Arts teacher. Most recently, Ms. Shein has taught for the
   Defendant New York City Department of Education ("DOE") at the Robert A. Van Wyck
   Middle School 217 in District 28 ("MS 217"). Over the course of her employment with
   the DOE, Ms. Shein proved herself a hard-working, capable and talented educator.

Despite her exemplary job performance, however, Defendants subjected Ms. Shein to relentless harassment and discrimination spearheaded by the Principal of MS 217, Defendant Patrick Burns. Indeed, beginning in 2012, Defendant Burns instituted a never ending campaign to purge Ms. Shein from MS 217 because of her Jewish faith and subjected Plaintiff to a work environment permeated with hostility, ridicule, humiliation, and torment.

2.  Specifically, in or around January 2012, Defendant Burns received a report that Ms. Shein had called Assistant Principal Bolan, who upon information and belief is Irish Catholic, a "dumb Catholic teacher." Upon information and belief, Defendant Burns, who is also Catholic, took personal offense to this comment, and thereafter launched a relentless attack against Plaintiff in blatant discrimination for her religious faith. Indeed, following this report, Defendant Burns conducted a clearly deficient and biased investigation, which outrageously substantiated the allegation against Ms. Shein. Defendant Burns' conclusion was preposterous, however, given that: (1) the complaining witness was in class taking a highly structured, timed Acuity English Assessment test with strict procedures in place as per citywide directives; (2) Ms. Shein had no contact with AP Bolan on the date in question; (3) Defendant Burns only interviewed a select few students who held a personal animus against Plaintiff; (4) Defendant Burns used students' statements which were influenced and collected by the original complaining student; and (5) Defendant Burns knew of the students' plot to get Ms. Shein fired.

3.  This initial complaint soon became the catalyst for a clearly discriminatory campaign against Ms. Shein. Indeed, following this allegation, Defendant Burns immediately

contacted Defendant DOE's legal counsel and sought advice on how to "pursue an attack" against Plaintiff. In furtherance of his attack on Plaintiff, Defendant Burns: (1) subjected Ms. Shein to repeated disciplinary action for frivolous and unfounded infractions; (2) unfairly and inaccurately scrutinized Ms. Shein's job performance; (3) humiliated Ms. Shein in the workplace; and (4) demoralized Plaintiff by removing Ms. Shein from the classroom and reassigned her to work in an old abandoned teacher's cafeteria replete with insect and rodent vermin, which was essentially a dumping ground for the school's garbage. Unsurprisingly, Ms. Shein was vindicated of a number of the charges against her. Curiously, however, Ms. Shein was found guilty of some charges and issued a $7,500.00 penalty.

4. Appallingly, the DOE demanded Ms. Shein pay the fine in a mere four (4) months with direct deductions from her wages between her April to August paychecks. Notably, these are Ms. Shein's final paychecks prior to her official retirement date eligibility. Such directive not only crippled Ms. Shein financially but is in direct relation to Ms. Shein's age and retirement eligibility. Meanwhile, Ms. Shein's similarly situated colleagues who are not of retirement age were not issued similar time limitations in which to pay. Clearly the DOE used Ms. Shein's age and retirement status against her by "grabbing" the entire amount from her paychecks, which the DOE issues and control.

5. Adding insult to injury, Defendants retaliated against Ms. Shein after Plaintiff sought advice from legal counsel regarding her rapidly deteriorating work environment. Indeed, after Ms. Shein's legal counsel sent a letter to Defendants on Plaintiff's behalf, Defendants inexplicably issued Ms. Shein an unjustified 'unsatisfactory' rating, and

3

thereafter lodged a set of Charges and Specifications against Plaintiff. Indeed, Defendants issued Ms. Shein *three* separate sets of Charges and Specifications in a desperate effort to keep Ms. Shein out of MS 217. Not only was the final set of charges completely unfounded, they were clearly lodged out of desperation to keep Ms. Shein out of the classroom.

6. As more fully set forth below, in: (1) treating Plaintiff differently than her similarly situated non-Jewish co-workers; (2) subjecting Plaintiff to heightened scrutiny on the basis of her religion and age; (3) subjecting Plaintiff to a hostile work environment on the basis of her religion and age; (4) subjecting Plaintiff to unfair and disproportionate disciplinary action on the basis of her religion and age; and (5) issuing Plaintiff repeated charges and specifications in a clear attempt to terminate her employment after Plaintiff's lawful participation in legal proceedings, Defendants discriminated and retaliated against Plaintiff on the basis of her age and religion in violation of Plaintiff's rights under the Equal Protection Clause of the First and Fourteenth Amendment to the U. S. Constitution, pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec Law §§ 290 et. seq.) and the New York City Human Rights Law, and violated Plaintiff's Procedural Due Process Rights as guaranteed by the Due Process Clause of the United States Constitution, pursuant to 42 U.S.C § 1983.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

8. Venue is proper in this case pursuant to 28 U.S.C. § 1391.

9. On or about January 26, 2015, Plaintiff served a Notice of Claim upon Defendant New York City Department of Education. On or about May 5, 2015, Defendant New York City Department of Education examined Plaintiff under oath pursuant to Section 50(h) of the General Municipal Law. Further, the present action is being commenced within one year and ninety days of the subject occurrence.

10. On or about January 29, 2015, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff is awaiting receipt of her Notice of Right to Sue.

## PARTIES

11. Plaintiff MAVIS SHEIN is a 54-year old female, who is a resident and domiciliary of Queens County, NY. At all times relevant to this complaint, Plaintiff was an "employee" of Defendant New York City Department of Education.

12. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE") is a municipal corporation incorporated under the laws of the State of New York, which is in charge of all public schools in the City of New York. Its headquarters are located at 52 Chambers Street, New York, NY 10007. At all times relevant to this complaint, Defendant DOE was Plaintiff's employer as that term is defined by the New York State Human Rights Law and the New York City Human Rights Law.

13. Defendant PATRICK BURNS at all times hereinafter mentioned, was and still is the Principal of Robert A. Van Wyck Middle School 217 in District 28, located at 85-05 144th Street, Briarwood, New York 11435. At all times relevant to this complaint, Mr. Defendant Burns was Plaintiff's direct supervisor. Accordingly, Defendant Burns was Plaintiff's "employer" as that term is defined by the New York State Human Rights Law and the New York City Human Rights Law

14. As set forth below, the individually named Defendant endorsed and directly participated in the discriminatory conduct against the Plaintiff.

## FACTUAL ALLEGATIONS

### *Background*

15. Plaintiff Mavis Shein has been a teacher for over thirty (30) years. Specifically, from 2000-2014 Ms. Shein worked for the Defendant DOE at the Robert A. Van Wyck Middle School 217 in District 28 ("MS 217"), located at 85-05 144th Street, Briarwood, New York 11435. Over the course of her long and distinguished career, Ms. Shein proved herself a hard-working, dependable, and effective educator, as exemplified by her positive performance evaluations and numerous accolades. In recognition for her hard work, Ms. Shein was granted tenure in 1988.

16. Ms. Shein is of Jewish faith and is respectfully cognizant of her religion. Plaintiff considers herself a proud Jewish-American.

6

17. At all times relevant to this charge, the Principal of MS 217 was Defendant Patrick Burns. Accordingly, Defendant Burns was Ms. Shein's supervisor. Further, upon information and belief, Defendant Burns is of Irish decent and of the Catholic faith.

18. Despite Ms. Shein's exemplary job performance, Defendant DOE, at the behest of Defendant Burns, callously and viciously targeted Ms. Shein and orchestrated an attack on Plaintiff with the clear intent to terminate her employment based upon her religion and age.

## Religious Discrimination

19. Defendant Burns used wholly fabricated and unfounded allegations against Plaintiff in a clear attempt to attack both her character and her professional livelihood.

20. Specifically, on or about January 24, 2012, Defendant Burns received a complaint from one of Plaintiff's students, which alleged Ms. Shein called Assistant Principal Bolan, who, upon information and belief, is also Irish Catholic, a "dumb Catholic teacher."

21. Defendant Burns thereafter used this accusation to attack Ms. Shein in an effort to have her removed from the school and terminate her employment. To that end, Defendant Burns conducted a clearly deficient investigation into the student's allegations against Plaintiff.

22. Specifically, Defendant Burns interviewed a select few students, many of whom held a personal animus against Ms. Shein. Indeed one witness subsequently admitted under oath that she *hated* Ms. Shein and, along with five (5) others had conspired to get Ms. Shein

fired. Notably, of the thirty (30) students in Petitioner's class, only four submitted statements which were, in fact compiled and submitted by the original complaining student. Appallingly, although Defendant Burns relied heavily on these students' statement, no statement was every provided to Ms. Shein for her personal review.

23. Moreover, on the day in question, Ms. Shein was administering a city-wide required Acuity English Language Comprehension examination, which required strict adherence to examination procedures. Due to the on-going examination, upon information and belief, one particular witness was not even in Ms. Shein's classroom at the time this incident allegedly occurred, although his testimony was used as part of its substantiation. Further, upon information and belief, AP Bolan never interacted with Plaintiff on the date in question and was never interviewed as to that effect.

24. Finally, Ms. Shein presented information to Defendant Burns which corroborated the falsity of the charges, along with documentary evidence evincing the students' animus against her. Appallingly, Defendant Burns refused to acknowledge said information.

25. Despite the vast evidence to the contrary, Defendant Burns substantiated the allegation against Plaintiff and issued Ms. Shein a letter to file, which was thereafter included in her personnel file.Additionally, Ms. Shein was ordered to attend an Office of Equal Opportunity ("OEO") conference; however, Defendants never afforded Ms. Shein the opportunity to speak with an OEO investigator.

26. Following this incident, Defendant Burns admitted that he wished to fire Plaintiff and appallingly sought advice from the DOE's legal counsel on his ability to "attack" Ms.

Shein. For the remainder of the school year, Defendants subjected Ms. Shein to an alarming variety of hostile behaviors by said students, which caused her extreme mental duress, and at one point, resulted in bodily injury. Furthermore, Defendant Burns removed Ms. Shein from her English Language Arts classroom, and placed her as a computer literacy teacher located in an undersized, underequipped basement classroom in the MS 217 building.

27. On or about March 5, 2013, Defendant Burns received a second complaint regarding Plaintiff's alleged conduct in the classroom. Specifically, Defendant Burns received, second-hand from Dean Parrino, a student's emailed statement, which alleged Plaintiff: (1) threw a book at the student; (2) stated the student was 'not smart'; (3) told the student he had no common sense; and (4) injured student by taking a bracelet off of the student's wrist.

28. Appallingly, Defendant Burns did *nothing* to question the validity of this student's complaint. Indeed, no formal statement was taken from the alleged victim. Rather, a 'copied and pasted' version of the student's email was utilized. Defendant Burns then immediately launched another attack against Ms. Shein.

29. As was done previously, Defendant Burns again conducted a deficient and biased investigation into this alleged misconduct. Notably, a significant number of students interviewed by Defendant Burns reported that *the incident did not happen*. Moreover, the remaining students interviewed gave conflicting statements, which utterly failed to corroborate the allegation against Ms. Shein.

30. In addition, there were glaring inconsistencies with the student's complaint and the objective realities. For example, the student alleged that a workbook was thrown at him. Curiously, the class in which this alleged incident took place was a computer-based literacy class which did not use any workbooks. To account for this obvious disparity, Defendant Burns simply concluded that "an object" was thrown, in a desperate effort to substantiate the allegation.

31. Even more jarring, the complaining student later altered his story, and reported that Ms. Shein never threw a book at him, but instead had placed a book on his desk. Further, the student additionally recanted part of his complaint and admitted that Ms. Shein never said he was "not smart." The complaining student similarly retracted his last accusation, and stated that he was purposely snapping the bracelet to annoy Plaintiff and in response, Ms. Shein confiscated the bracelet for the remainder of the class period. The student additionally stated that he was not injured during this or any interaction with Ms. Shein.

32. On or about April 22, 2013, Defendant Burns interviewed Ms. Shein in regards to the aforementioned allegation. Although Defendant Burns informed Plaintiff of the accusation, he again refused to provide Ms. Shein with a copy of the actual complaint, and never proffered the student's actual statement for Ms. Shein's review.

33. During this meeting, Ms. Shein truthfully denied that the incident occurred, and informed Defendant Burns that this complaint was part and parcel of a conspiracy amongst several students to "get Ms. Shein fired." Appallingly, Defendant Burns refused to investigate Plaintiff's contentions that the complaints were falsified in an effort to target her. Specifically, Defendant Burns refused to interview a staff member who clearly heard

10

several students merrily 'chanting' in the hallway outside Ms. Shein's classroom: "We got Ms. Shein fired."

34. Unsurprisingly, as a result of his own improperly conducted and biased investigation, and in the face of insurmountable evidence to the contrary, Defendant Burns appallingly substantiated the allegations against Ms. Shein and issued Plaintiff a letter to file which was thereafter placed in her personnel file.

35. As a result of this substantiated allegation, Defendant Burns issued Ms. Shein a 'U' rating at the end of the school year, the first U rating she had ever received after 29 years of service.

36. Following this incident, Defendant Burns admitted that he again contacted DOE's legal representative because he wanted to "*pursue an attack*" againstPlaintiff, and wanted to know if he could finally terminate her employment. Clearly, Defendant Burns continued to target Ms. Shein and was adamant about removing her from MS 217 on the basis of her religion.

37. Following these incidents, Defendant Burns continued to target Plaintiff. Indeed, on or about April 16, 2013, Defendant Burns accused Ms. Shein of acting unprofessionally toward a student's parent.

38. In reality, Dean Parrino had surprised Plaintiff at her classroom at the end of her day when he appeared with a student's parent for an impromptu meeting with Ms. Shein. Ms Shein had been in previous communication with Dean Parrino and said parent, and had

11

requested the parent meet with Dean Parrino regarding her son's various high-level conduct code infractions.

39. After having followed protocol by informing the parent, dean, and administration through written and verbal correspondence, and after having reviewed NYC student conduct code protocol, Ms. Shein was of the opinion that the level of infractions warranted supervisory and/or administrative intervention.

40. Rather than handle the situation himself, as he should have due to the level of seriousness it posed, Dean Parrino surprised Ms. Shein and attempted to force Plaintiff to resolve the situation herself, going so far as to request the student be present for this impromptu meeting. Plaintiff believed that Dean Parrino's behavior was not in line with NYC DOE policy and requested the parent be taken to a supervisory office for conference.

41. Inexplicably, Ms. Shein's requests went unheeded and the parent was taken to Defendant Burns' office where she completed a witness statement, which accused Plaintiff of acting unprofessionally. In a subsequent interview with Defendant Burns, Ms. Shein offered to meet with the parent, dean and supervisor to amicably resolve the situation. Defendant Burns, however, absurdly ignored Ms. Shein's request, and informed Plaintiff that she was an "embarrassment to the school and the entire community and she simply did not fit in with the MS 217 family."

### Retaliation

42. In reply to the deplorable treatment Plaintiff endured at the hands of Defendants, Plaintiff retained independent counsel to whom she reported that she was being singled out and

subjected to disparate treatment and a hostile work environment. Following Plaintiff's actions, Defendants appallingly subjected Ms. Shein to increased scrutiny in clear retaliation for her lawful complaints.

43. Specifically, on or about January 20, 2014, Plaintiff's attorney sent a letter to Defendants which notified the DOE of Ms. Shein's complaints against Defendant Burns, and the allegations Plaintiff had lodged against the DOE. Almost immediately thereafter, Defendants launched a concerted attack against Plaintiff in clear retaliation for her lawful complaints of discrimination and a hostile work environment.

44. Indeed, on or about February 11, 2014, Plaintiff was scheduled to attend a pre-observation conference with Assistant Principal Teutschman in preparation for her upcoming formal observation. Although Plaintiff was initially informed that AP Teutschman would conduct the pre-observation conference, Defendant Burns surprised Plaintiff at the time of the conference and conducted the pre-observation himself.

45. Defendant Burns explained that AP Teutschman was unable to attend the conference because she allegedly been in a car accident. Upon information and belief, Defendant Burns fabricated an excuse to take over Plaintiff's pre-observation conference in a clear effort to intimidate Ms. Shein. At no time did Mr. Defendant Burns inform Miss Shein that he would be conducting the formal observation. Indeed, Defendant Burns explained that he was conducting the pre-observation conference in AP Teutschman's absence and that the formal observation would be held as scheduled by AP Teutschman sometime during the remainder of the week.

46. Appallingly, AP Teutschman failed to appear in Ms. Shein's classroom as scheduled to conduct the formal observation. Notably, AP Teutschman failed to give Plaintiff any notice as required for cancellation of a formal observation. Thereafter, Plaintiff met again with Defendant Burns who informed her the formal observation would be rescheduled for February 25th, 2014. Again, at no time did Mr. Defendant Burns state he would be conducting the formal observation.

47. On or about February 25, 2014, Defendant Burns conducted Ms. Shein's yearly formal observation during Plaintiff's third-period class. Notably, this was the *first* time Defendant Burns had conducted a formal observation of Plaintiff. Defendant Burns and AP Teutschman unfairly scrutinized Plaintiff's lesson and inexplicably rated Ms. Shein "ineffective."

48. Notably, a number of the criticisms Defendant Burns and Teutschman used to justify their unfair and inaccurate evaluation were clearly rebutted by documentary evidence. For example, Defendant Burns criticized Plaintiff for failing to utilize Common Core standards during her lessons.

49. In reality, however, Plaintiff had the Common Core standards displayed on her classroom blackboard and had notified AP Teutschman via email regarding the standards for her lesson plan, which clearly used Common Core standards. Indeed, photographs of Ms. Shein's classroom taken during the February 25th observation clearly showed Common Core standards on display on the blackboard and in use during the lesson.

50. Additionally, the computer literacy program Ms. Shein was assigned to use directly correlated with New York State Common Core standards. These lessons were provided to AP Teutschman and Defendant Burns.

51. Additionally, Ms. Shein was accused of not following the 5 step literacy program as outlined in the Achieve 3000 program. Not only did Ms. Shein follow the 5 step literacy program and offer the students feedback, she enhanced the program through her expertise as a Literacy Specialist. Notably, Plaintiff was commended for a virtually identical lesson the previous year by Mr. Edward Bolan, her then supervisor.

52. On February 28, 2014, Defendant Burns and Teutschman conducted Plaintiff's post-observation conference. Inexplicably, Plaintiff was not provided a copy of the written evaluation during the post-observation conference. Indeed, Plaintiff did not receive a copy of the evaluation until April 2014. Notably, the evaluation did not contain AP Teutschman's signature as co-evaluator.

53. Throughout the post observation conference, lasting approximately 1 hour and 20 minutes, Plaintiff was outrageously prohibited from speaking until Defendant Burns ordered her to do so. Additionally, Defendant Burns alleged that Plaintiff adamantly refused directions to view a 'demonstration' lesson taught by another teacher at the school. He further alleged that Defendant used improper and insulting language in reference to students within the school.

54. Any allegation that Plaintiff disrespected or used insulting language in reference to students at MS 217 is patently false. Moreover, Plaintiff never refused a direction from

either Defendant Burns or Teutschman but rather suggested that an alternative course of action would be more effective. In fact, Plaintiff made arrangements to view the 'demonstration' lesson but was subsequently instructed by AP Teutschman not to attend, again due to her unexpected and unexplained absence on that date. Plaintiff did in fact attend the 'demonstration' lesson.

55. Notably, Defendant Burns, who took notes during the post-observation conference, made no reference to any improper behavior or language by Plaintiff, which clearly negates his allegations. In addition, AP Teutschman similarly prepared nothing in writing as to neither her opinions nor evaluation of the lesson and post-observation conference.

56. On the very same day as the Post Observation conference, February 28, 2014, Defendants lodged a set of Charges and Specifications against Plaintiff, and provided Ms. Shein with a copy thereof. Inexplicably, this first set of charges was entirely based on the students' past allegations against Plaintiff, namely that Ms. Shein had called AP Bolan a "dumb Catholic" and had thrown a book at a student. Notably, those alleged infractions occurred a number of years prior and had already been investigated. Cleary, Defendant was desperate to attack Plaintiff and used any grounds available to do so.

57. Adding insult to injury, Defendant Burns continued to target Plaintiff in the workplace and on or about March 11, 2014, removed Ms. Shein from her classroom. Specifically, Defendant Burns reassigned Plaintiff to 'administrative duties' first in a disgusting and demoralizing basement location.

58. Indeed, Defendant Burns placed Plaintiff in a discarded, unused basement 'teacher's cafeteria,' which had most recently been used as a dumping ground for old filing cabinets, boxes, books and broken furniture. Additionally, Plaintiff's new "office" was replete with insect and vermin infestation. Furthermore, it had no outside phone line and could not receive cell phone signals, wifi, nor did it have proper lighting.

59. Defendant Burns outrageously admitted that he wanted Ms. Shein out of the classroom and expected not to give Plaintiff any work during her reassignment. Indeed, Defendant Burns stated that he expected Ms. Shein to report to that disgusting work environment and do nothing more.

60. Upon information and belief, Defendant had knowledge of and approved Ms. Shein's relocation.

61. After Ms. Shein rightfully complained of her re-assignment, Defendant Burns further humiliated Plaintiff and placed her in a small 'student support' staff office which housed three (3) school aides and one budget manager. Ms. Shein was ordered to sit at a children's desk facing the wall with her back to the door. In addition, Defendant Burns explicitly instructed Ms. Shein not to interact with the students even though she was placed in an office heavily trafficked by students.

62. Upon information and belief, Defendant DOE had knowledge of and approved Ms. Shein's relocation. Indeed, upon information and belief, the DOE encouraged Defendant Burns to segregate Ms. Shein from the students and staff at MS 217 in its continued effort

17

to single Plaintiff out for her religious beliefs. Such actions not only ostracized Ms. Shein, but also caused Ms. Shein severe emotional distress and mental anguish.

63. Defendant Burns thereafter transferred Ms. Shein a third time to the 2nd floor Men's Bathroom/Lounge where she was forced to remain the entire day and listen while male teacher's 'relieved' themselves in the bathroom throughout the day.

64. Due to Plaintiff's involuntary reassignment, Ms. Shein never received a third informal observation for the 2013/2014 school year, although she taught cumulatively and consecutively for 6 months of that school year. Consequently, Defendants never issued Ms. Shein a year-end evaluation for the 2013/2014 academic school.

65. The non-issuance of the end year rating unjustly allowed Defendants to use negative lesson review material in Ms. Shein's subsequent 3020a disciplinary proceeding, that would otherwise have been voided by appeal under New York Education Law 3012-C. This action by Defendants was clearly committed to circumvent the law as prescribed in 3012-C in order to level charges against Plaintiff.

66. Moreover, in a second set of charges against Plaintiff, Defendants accused Ms. Shein of interacting with students on two occasions while on administrative duty. Notably, Defendants proffered no actual evidence of these supposed interactions.

67. On or about October 17, 2014, Ms. Shein was removed from her assigned location in the Men's Lounge at MS 217 due to a complaint that she had called a fellow teacher names in Hebrew. This accusation was blatantly false, as Ms. Shein does not even speak the Hebrew language.

68. When questioned by Defendant Burns, Ms. Shein informed Defendant Burns that she does not speak the Hebrew language. Although no other people were present when said allegation occurred Defendant Burns inexplicably substantiated the charge, removed Ms. Shein from MS 217, and placed her in a regional office location.

69. Appallingly, on or about December 19, 2014, over the Hanukkah holiday, Defendant DOE served Ms. Shein with a ***third*** set of charges in their continued and misguided effort to ensure Ms. Shein does not return as a teacher at MS 217. Upon information and belief, the DOE purposely served Ms. Shein with the third set of charges during the Jewish holiday in malicious disregard for her religious traditions and heritage.

### *Age Discrimination*

70. Following nearly twenty (20) days of hearing, hearing Officer Howard Stiefel and Hearing Officer Doyle Pryor rendered separate decisions on the charges lodged against Plaintiff.

71. Unsurprisingly, a number of the allegations against Ms. Shein were found unsubstantiated.

72. In addition, Hearing Officer Stiefel substantiated a select few charges against Ms. Shein and issued Plaintiff a $7,500.00 fine to be paid in equal amounts from Plaintiff's paychecks through the remainder of the 2014/2015 school year.

73. Upon information and belief, the DOE insisted that Ms. Shein pay the fine by the end of the year because they assumed Plaintiff would retire at the conclusion of the 2014/2015 school year.

74. Accordingly, Defendants used Plaintiff's age, and potential for retirement, against her and subjected Ms. Shein to untold financial hardship on the basis of her age.

75. Indeed, upon information and belief, many of Plaintiff's similarly situated colleagues who are not eligible for retirement were not issued similar time limitations in which to pay.

76. Indeed, under normal circumstances, wage garnishments would not be proffered in such a harsh an punitive manner. Further, upon information and belief, the average time span in which to pay is approximately eighteen (18) months.

77. Clearly, the DOE's use of this time frame is purely punitive in nature, and meant only to ensure the DOE can attack Plaintiff's wages while she was actively "in service" and before she reaches retirement eligibility.

78. Finally, Ms. Shein's job title has been significantly diminished and irrevocably damaged. Indeed, Ms. Shein currently works as an ATR-Absence Teacher/reserve Teacher. As such, Ms. Shein is no longer appointed to a particular school as she once was. As such, Plaintiff must report to different locations as a substitute teacher and must attend mandatory district interviews.

79. Further, Ms Shein does not have the same security measures, status, or due process rights as she was previously afforded. Indeed, under the latest memorandum of Agreement between the DOE and the United Federation of Teachers, NYC ("UFT"), ATR teachers may be terminated after only two (2) negative evaluations and an expedited 3020-a proceeding. Accordingly, Plaintiff may be terminated after merely two to four weeks.

80. Plaintiff's diminished status and its attendant insecurity, in addition to the deplorable environment Ms. Shein was forced to endure at the hands of Defendants, has caused Ms. Shein severe stress and anxiety, as well as untold mental anguish. Indeed, Ms. Shein has treated with a clinical social worker to address the substantial emotion distress she continues to suffer because of Defendants' actions.

## CLAIMS FOR RELIEF

### AS AND FOR THE FIRST CAUSE OF ACTION
*(Religious Discrimination in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983)*

81. Plaintiff repeats and re-alleges each and every allegation herein.

82. By way of the foregoing, in: (1) subjecting Plaintiff to repeated disciplinary action premised upon unfounded allegations; (2) conducting deficient and biased investigations with the intent to discipline Plaintiff on the basis of her religion; (3) subjecting Plaintiff to unhealthy, unsafe, and objectively deplorable working conditions on the basis of Plaintiff's religion; (4) "pursuing an attack" on Plaintiff on the basis of her religion; (5) lodging repeated meritless charges against Plaintiff on the basis of her religion; (6) serving Plaintiff with charges during Hanukah in complete disregard for Plaintiff's

religious observance; (7) treating Plaintiff less well than her similarly situated non-Jewish colleagues; and (8) subjecting Plaintiff to a hostile work environment on the basis of Plaintiff's religion, Defendants discriminated against Plaintiff on the basis of her religion in violation of her rights as guaranteed by the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

## AS AND FOR THE SECOND CAUSE OF ACTION
*(Religious discrimination in violation of the New York State Human Rights Law, N.Y. Exec Law § 290 et. seq.)*

83. Plaintiff repeats and re-alleges each and every allegation herein.

84. By way of the foregoing, in: (1) subjecting Plaintiff to repeated disciplinary action premised upon unfounded allegations; (2) conducting deficient and biased investigations with the intent to discipline Plaintiff on the basis of her religion; (3) subjecting Plaintiff to unhealthy, unsafe, and objectively deplorable working conditions on the basis of Plaintiff's religion; (4) "pursuing an attack" on Plaintiff on the basis of her religion; (5) lodging repeated meritless charges against Plaintiff on the basis of her religion; (6) serving Plaintiff with charges during Hanukah in complete disregard for Plaintiff's religious observance; (7) treating Plaintiff less well than her similarly situated non-Jewish colleagues; and (8) subjecting Plaintiff to a hostile work environment on the basis of Plaintiff's religion, Defendant DOE discriminated against Plaintiff on the basis of her religion in violation of the New York State Human Rights Law (N.Y. Exec. Law §§ 290 *et. seq.*)

## AS AND FOR THE THIRD CAUSE OF ACTION
*(Religious Discrimination in violation of the New York City Human Rights Law)*

85. Plaintiff repeats and re-alleges each and every allegation herein.

86. By way of the foregoing, in: (1) subjecting Plaintiff to repeated disciplinary action premised upon unfounded allegations; (2) conducting deficient and biased investigations with the intent to discipline Plaintiff on the basis of her religion; (3) subjecting Plaintiff to unhealthy, unsafe, and objectively deplorable working conditions on the basis of Plaintiff's religion; (4) "pursuing an attack" on Plaintiff on the basis of her religion; (5) lodging repeated meritless charges against Plaintiff on the basis of her religion; (6) serving Plaintiff with charges during Hanukah in complete disregard for Plaintiff's religious observance; (7) treating Plaintiff less well than her similarly situated non-Jewish colleagues; and (8) subjecting Plaintiff to a hostile work environment on the basis of Plaintiff's religion, Defendant DOE discriminated against Plaintiff on the basis of her religion in violation of the New York City Human Rights Law.

## AS AND FOR THE FOURTH CAUSE OF ACTION
*(Retaliation in violation of the First Amendment and the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law, and the New York City Human Rights Law)*

87. Plaintiff repeats and re-alleges each and every allegation herein.

88. By way of the foregoing, in: (1) rendering Plaintiff an unfair and inaccurate "Ineffective" rating on her formal observation; (2) purposefully failing to provide Plaintiff with a third informal observation and year end evaluation; (3) issuing Plaintiff three separate sets of Charges and Specifications; and (4) involuntarily transferring Plaintiff out of the

classroom and forcing Plaintiff to "work" out of unsuitable and deplorable offices, Defendant DOE retaliated against Plaintiff for her lawful complaints of discrimination in violation of the First Amendment of the United states Constitution pursuant to 42 U.S.C. § 1983, the New York City Human Rights Law, the New York State Human Rights Law, and the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

89. By way of the foregoing, in: (1) rendering Plaintiff an unfair and inaccurate "Ineffective" rating on her formal observation; (2) purposefully failing to provide Plaintiff with a third informal observation and year end evaluation; (3) issuing Plaintiff three separate sets of Charges and Specifications; and (4) involuntarily transferring Plaintiff out of the classroom and forcing Plaintiff to "work" out of unsuitable and deplorable offices, Defendant Burns retaliated against Plaintiff for her lawful complaints of discrimination in violation of the First Amendment of the United states Constitution pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

## AS AND FOR THE FIFTH CAUSE OF ACTION
*(Age Discrimination in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983)*

90. Plaintiff repeats and re-alleges each and every allegation herein.

91. By way of the foregoing, in: (1) levying a fine against Plaintiff to be paid within a short time span; (2) financially crippling Plaintiff by levying a fine against Plaintiff to be paid within a short time span; (3) using Plaintiff's eligibility for retirement against her; and (4)

treating Plaintiff less well than her similarly situated younger co-workers, Defendants discriminated against Plaintiff on the basis of her age in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

## AS AND FOR THE SIXTH CAUSE OF ACTION
*(Violation of Procedural Due Process Rights in violation of the Due Process Clause of the 14th Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.)*

92. Plaintiff repeats and re-alleges each and every allegation herein.

93. By way of the foregoing, in: (1) conducting perfunctory and inadequate investigations into the complaints against Plaintiff and (2) serving Plaintiff with repeated sets of Charges and Specifications which Defendants knew or should have known were meritless, Defendants violated Plaintiff's procedural due process rights as guaranteed by the Due Process Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

## DEFENDANT'S LIABILITY

94. Defendant DOE is liable for its employees' deprivation of Plaintiff's rights because such acts were taken in accordance with the Defendant's custom or practice of discriminating and/or selectively treating individuals; these practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers; and the individual policymakers directly participated in and/or tacitly condoned the discrimination/retaliation to which Plaintiff was subjected.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which she is entitled, including but not limited to:

1. Awarding reasonable attorneys fees and costs and disbursements of this action;

2. Granting such other and further relief that to the Court seems just and proper.

Dated: Garden City, New York
　　　May 11, 2015

THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
*Attorneys for Plaintiff*
1461 Franklin Avenue
Garden City, New York 11530
(516) 393-9151

Steven A. Morelli

26

## VERIFICATION

State of New York )
                  ) ss:
County of Nassau  )

MAVIS SHEIN, being duly sworn, deposes and says that deponent is a Plaintiff in the within action; that she has read the forgoing **Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matter therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____
MAVIS SHEIN

Sworn to before me this
11ᵗʰ day of May 2015

_____
Notary Public

LISA MARIE DESTEFANO
Notary Public, State of New York
No.01DE6314907
Qualified in Suffolk County
Commission Expires November 17, 20__