UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                     :
MAVIS SHEIN,                      :         15cv4236 (DLC)
                                       :
                 Plaintiff,      :         OPINION AND ORDER
                                     :
           -v-                       :
                                     :
NEW YORK CITY DEPARTMENT OF EDUCATION  :
and PATRICK BURNS, Individually and in :
his Official Capacity,           :
                                     :
                 Defendants.     :
                                     :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Steven Anthony Morelli
The Law Office of Steven A. Morelli
990 Franklin Ave
Garden City, NY 11530

For the defendants:
Sean Robert Renaghan
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

    This dispute arises out of disciplinary actions that

Patrick Burns ("Burns") and the New York City Department of

Education ("NYCDOE") took against Mavis Shein ("Shein") when she

was a middle school teacher.  Shein alleges primarily that she

was subject to discriminatory treatment because of her religion

and retaliatory treatment after allegedly complaining of age

discrimination.  The defendants moved to dismiss on several

grounds, including failure to state a claim, the applicable
statutes of limitations, and collateral estoppel.  For the
reasons that follow, the motion to dismiss is granted with
respect to every claim except Shein's retaliation claim under
city law.  The Court declines to exercise supplemental
jurisdiction over that claim.

## Background

These facts are taken from the complaint and documents
integral to the complaint.  Shein is a Jewish woman in her mid-
fifties who has been a New York City public school teacher for
approximately 30 years.  She had tenure.  From 2000 to 2014,
Shein taught at the Robert A. Van Wyck Middle School.  Burns is
the principal at that school and was Shein's supervisor; he is
also Irish Catholic.

Three Complaints Regarding Shein: January 2012 to April 2013

Burns received three complaints about Shein between January
2012 and April 2013.  Around January 24, 2012, Burns received a
complaint that Shein had called an assistant principal a "dumb
Catholic teacher."  Burns conducted an allegedly deficient
investigation into this accusation.  Burns then removed Shein
from her English teaching assignment and made her a computer
literacy teacher in a basement classroom.

A second complaint against Shein was filed on March 5,
2013.  That complaint included allegations that Shein threw a

book at a student, said the student was not smart, told the student he had no common sense, and injured the student by taking a bracelet off his wrist.  Shein told Burns that the complaints against her were falsified by students who sought to get her fired.  As a result of the second complaint against her, Shein received her first "U" rating of her career.

On April 16, 2013, Burns accused Shein of acting unprofessionally towards a parent during a meeting.  Shein claims she was surprised when a supervisor brought the parent in for a meeting with her because she had requested that the parent deal directly with her supervisor regarding her son's conduct issues.  Burns allegedly ignored her subsequent request to resolve the situation amicably with the parent involved and told Shein that she was an "embarrassment" to the school.

January 20, 2014 Letter

On January 20, 2014, Shein's counsel wrote to Burns to notify him of Shein's allegations involving two instances of an unsafe work environment.  The letter describes two instances in which Shein was accused of physically harming students.  One was the incident described above where she was accused of throwing a book at a student, and the other involved a claim that she slammed a door in a student's face on May 24, 2013.  The letter references the "U" rating she received at the end of the 2012-2013 academic year and indicates that she has filed several

3

grievances related to these events.  The letter accuses Burns of setting Shein up "for failure" when he assigned her too many students in connection with a computer teaching initiative.  The letter further discusses an incident where a student "became physically abusive" and expresses Shein's concerns that Burns did not follow proper procedures to ensure her safety.

Finally, the letter briefly addresses Burns's treatment of Shein personally.  It alleges that Burns has made "plainly inappropriate statements," including "references to [Shein's] age and other decisions based on financial considerations and not safety first."  Ultimately, the letter accuses Burns of having an "unabashed disdain" for Shein.  There is no reference in the letter to religion or religious discrimination.

After receiving this letter, the defendants allegedly began a "concerted attack" against Shein in retaliation.  For example, on February 11, 2014, an assistant principal was supposed to attend a pre-observation conference with Shein.  Shein claims that Burns lied when he said that his colleague had been in a car accident in order to conduct the evaluation himself and intimidate her.  Two weeks later, Burns conducted Shein's yearly formal observation.  After that observation, Shein was rated as "ineffective."

First Set of Disciplinary Charges

On February 28, 2014, Burns lodged a set of formal administrative charges and specifications against Shein.  These charges were based on the three complaints about Shein described above that were made to Burns between January 24, 2012 and April 16, 2013.

On March 11, 2014, Burns removed Shein from her classroom and reassigned her to administrative duties in an allegedly dirty basement room.  Shein claims that the new office was full of insects and vermin; it also had no outside telephone line, wi-fi, or cell phone reception.  After Shein complained about the office, she was placed in a staff office, where she claims she was forced to sit at a children's desk and face the wall with her back to the door.  Burns also allegedly ordered Shein not to talk with students.  Shein was then transferred a third time to a lounge that was close enough to the men's bathroom that she could hear men relieving themselves.

Second Set of Disciplinary Charges

In June of 2014, a second set of charges was filed against Shein.[1]  Those charges included allegations that Shein was ineffective during a formal observation on February 25, 2014.

---

[1] This set of charges was consolidated with the first set and adjudicated in the same formal disciplinary hearing.

5

Specifically, she was accused of failing to use Common Core standards and neglecting to give feedback to students, among other errors.  The second set of charges also included allegations that she made inappropriate comments about students to Burns during the post-observation conference of February 28. Finally, the second set of charges accused Shein of interacting with students between March 10 and May 22, 2014, when Burns had instructed her to limit her duties to administrative work that did not involve students.

Third Set of Disciplinary Charges

On December 19, 2014, Shein was served with a third set of disciplinary charges; Shein believes that she was intentionally targeted during Hanukkah because of her religion.  These charges stemmed from incidents that occurred on May 24, 2013 and October 1, 2014.  The May 24 incident involved Shein allegedly slamming a door in a student's face and grabbing that student's shirt. The October 1 incident involved another teacher who accused Shein of speaking inappropriately to her and calling her names in Hebrew.  Shein does not speak Hebrew.  On October 17, 2014, Shein was again removed from her placement and sent to a regional office because of the allegations about inappropriate comments to her colleague.

Two Formal Disciplinary Hearings

    Two formal disciplinary hearings, conducted pursuant to NY
Educ. Law § 3020-a, resulted from these events.  On March 31,
2015, after hearing many days of testimony, a hearing officer
issued a decision on the first and second set of charges
discussed above.  The hearing officer found that Shein was
guilty of conduct underlying the March 5 and April 16, 2013
complaints against her.  Specifically, Shein was found guilty of
throwing a book at a student, ripping a bracelet off a student's
wrist, making inappropriate comments in front of a parent, and
other more minor misconduct.  She was also found guilty of
ineffective teaching during a formal observation of February 25,
2014, and making some inappropriate comments during a post-
observation conference of February 28, 2014.  The hearing
officer found that Shein was not guilty of making the January
2012 "dumb Catholic teacher" comment and that she did not have
impermissible contact with students between March 10 and May 22,
2014.

    Shein was issued a $7,500 fine, which was garnished from
her paychecks for the remainder of the school year.  She was
given only a few months to pay the fine because she was expected
to retire by the end of the academic year.  According to the
complaint, this shows that Shein was subject to age
discrimination when she was asked to pay her fine faster than

7

younger teachers who were not eligible for retirement.  This short garnishment schedule based on Shein's anticipated retirement is the only claimed instance of age discrimination in her complaint.

On April 27, 2015, a second hearing officer issued his decision on the third set of disciplinary charges.  He found Shein guilty of making inappropriate comments to another teacher on October 1, 2014, and wrote that the appropriate penalty was a written reprimand.  He found that Shein was not guilty of slamming a door in a student's face, making inappropriate comments to students, and other misconduct associated with the alleged incident of May 24, 2013.

Shein claims that employees who she believes are Christian received more favorable treatment than she did during investigations that Burns conducted for misconduct and corporal punishment.  She names five teachers who were not removed from their classrooms during Burns's investigations.  She asserts that Burns did not reassign those teachers to other classrooms during their investigations and that the teachers continued to receive satisfactory performance evaluations.  Shein further contends that a Christian colleague who was removed from her classroom during a pending investigation was placed in a more appropriate reassignment.  Shein does not allege that the complaints against those teachers were substantiated, that

formal charges were filed against them, that they were subject to disciplinary hearings, or that they were found guilty of misconduct.

Shein brings several causes of action based on these events. They include: (1) religious discrimination under the Fourteenth Amendment, 42 U.S.C. § 1983, and Title VII, and in violation of New York State Human Rights Law ("NYSHRL") § 290 and the New York City Human Rights Law ("NYCHRL"); (2) retaliation in violation of the First and Fourteenth Amendments and pursuant to § 1983, Title VII, the NYSHRL, and the NYCHRL; (3) age discrimination under the Fourteenth Amendment and § 1983; and (4) deprivation of procedural due process under the Fourteenth Amendment and § 1983.

Shein filed the original complaint on June 2, 2015. Shein filed an amended complaint on August 7. The August 7 amended complaint did not contain any specific, concrete allegations that similarly situated, non-Jewish teachers were treated more favorably than Shein. On August 21, the defendants moved to dismiss the complaint. One of the arguments in that motion was that Shein had not identified any similarly situated, non-Jewish colleagues who were treated more favorably than Shein. This failure, the defendants claimed, rendered her contention that her treatment was motivated by discriminatory animus implausible.

The plaintiff was given an opportunity to respond to the
August 21 motion to dismiss by amending her complaint a second
time.  On September 17, the plaintiff filed a second amended
complaint.  Shein added the few paragraphs discussed above that
identify purportedly similarly situated, Christian colleagues
who were treated more favorably than Shein during the
investigations into their misconduct.  The defendants moved to
dismiss the second amended complaint on October 1.  The motion
to dismiss became fully submitted on November 13.

### Discussion

When deciding a motion to dismiss under Rule 12(b), Fed. R.
Civ. P., a court must "accept all allegations in the complaint
as true and draw all inferences in the non-moving party's
favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d
471, 475 (2d Cir. 2009).  "To survive a motion to dismiss under
Rule 12(b)(6), a complaint must allege sufficient facts which,
taken as true, state a plausible claim for relief."  Keiler v.
Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain
sufficient factual matter, accepted as true, to state a claim
for relief that is plausible on its face.").  "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Parkcentral

Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).

In deciding a motion to dismiss, documents outside the pleadings may be considered in certain circumstances. For example, documents "that the plaintiffs either possessed or knew about and upon which they relied in bringing suit" may be considered. Smith v. Hogan, 794 F.3d 249, 254 (2d Cir. 2015) (citation omitted). Moreover, "a court may consider an 'integral' document where the complaint relies heavily upon its terms and effect." Id. (citation omitted). Shein's January 20, 2014 letter and the decisions of the hearing officers, which were attached to the defendants' motion to dismiss, are appropriate to consider at this stage. Shein makes allegations integrally related to each document, including representations about their contents. Since her attorney composed the January 20, 2014 letter, she was on notice about its contents, and the letter is the basis for her retaliation claim.

## I.   Religious Discrimination Claims under Title VII and 42 U.S.C. § 1983

Title VII requires "a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801

F.3d 72, 85 (2d Cir. 2015).[2]  In other words, at the pleadings stage a plaintiff "must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  Id. at 86.

An adverse employment action exists if an employee "endures a materially adverse change in the terms and conditions of employment."  Id. at 85 (citation omitted).  This must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," but it can include "significantly diminished material responsibilities, or other indices unique to a particular situation."  Id. (citation omitted).  "As to the second element, an action is 'because of' a plaintiff's . . . religion . . . where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action."  Id. (citation omitted).  Title VII discrimination claims do not require but-for causation.  Id. at 86.  In order to survive a motion to dismiss, a plaintiff must "only plausibly

---

[2] To survive a motion to dismiss, a plaintiff alleging discrimination does not need to plead a prima facie case satisfying all four elements of the McDonnell Douglas framework, which include: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Vega, 801 F.3d at 83 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

allege facts that provide at least minimal support for the
proposition that the employer was motivated by discriminatory
intent." Id. at 86-87 (citation omitted).  A plaintiff may do
so by "alleging facts that directly show discrimination or facts
that indirectly show discrimination by giving rise to a
plausible inference of discrimination." Id. at 87.  While
"detailed factual allegations are not required," and the factual
allegations in the complaint must be assumed to be true, a
formulaic recitation does not suffice. Id. at 86 (citation
omitted).

Section 1983 provides a cause of action for damages against
"[e]very person who, under color of any statute . . . of any
State . . . subjects, or causes to be subjected, any citizen . .
. to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws."  "[P]ublic employees
aggrieved by discrimination in the terms of their employment may
bring suit under 42 U.S.C. § 1983 against any responsible
persons acting under color of state law." Vega, 801 F.3d at 87.
Once the plaintiff meets the "color of law" requirement, her
"equal protection claim parallels [her] Title VII claim." Id.
at 88 (citation omitted).  The only difference is that a § 1983
claim "can be brought against an individual." Id.

Shein appears to assert that Burns discriminated against
her based on her religion in three ways.  Because of her

religion, Burns filed three sets of formal disciplinary charges against her between February and December of 2014; gave her a negative performance review in February of 2014; and involuntarily removed her from teaching and assigned her to unsuitable locations beginning in March of 2014.

Shein has not pled sufficient facts to support her claims of religious discrimination under Title VII and § 1983.  This is true even though Shein has identified acts taken against her which are sufficiently severe to constitute adverse actions. These include removing her from teaching, assigning her to spend time in unsanitary locations, and filing formal disciplinary charges against her.  She has failed, however, to plead a plausible claim that Burns acted with religious animus when taking these steps.

Shein has not pointed to any direct evidence that Burns harbored a discriminatory bias.  There is no allegation here that Burns ever uttered a slur or derogatory statement regarding Shein's religion or the Jewish faith.  Each of the complaints brought against Shein in 2012 and early 2013 was initiated by a third party.  In ruling on the formal administrative charges filed against Shein in 2014, two independent hearing officers found Shein guilty of serious misconduct associated with incidents spanning from March 5, 2013 through October 1, 2014. Shein's January 2014 letter of complaint made no assertion of

14

religious discrimination.  To support a claim of discriminatory bias, Shein relies exclusively on her identification of five individual comparators who she contends were treated more favorably by Burns in two ways: they were not removed from their classrooms pending disciplinary investigations and they continued to receive satisfactory performance evaluations. Shein identifies a sixth Christian colleague who was removed from her classroom pending her investigation but, according to Shein, was placed in a more appropriate assignment than she was.

Where a plaintiff relies on evidence of disparate treatment to support her discrimination claim, she must "give plausible support to a minimal inference of discriminatory motivation." Vega, 801 F.3d at 84 (citation omitted).  "[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination."  Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).  "A similarly situated employee is one similarly situated in all material respects to the plaintiff."  Raspardo v. Carlone, 770 F.3d 97, 126 (2d Cir. 2014) (citation omitted).  "In the context of employee discipline . . . the plaintiff and the similarly situated employee must have engaged in comparable conduct, that is, conduct of comparable seriousness."  Id. (citation omitted). Ultimately, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance, but need not be identical."

Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014)
(citation omitted).

Shein's allegations are insufficient to find a plausible
claim of discriminatory bias under these standards.  Although
she names coworkers, she has not plausibly alleged that they
were similarly situated to her in terms of either her removal
from the classroom or her 2014 negative performance evaluation.
While Burns removed Shein from the classroom after formal
disciplinary charges were lodged against her, Shein does not
assert that such charges were ever filed against any of the
comparators, much less that any charges against them resulted in
findings of misconduct and the imposition of penalties.
Conversely, like her comparators, Shein was not removed from the
classroom while the complaints about her conduct made by
parents, students, and fellow teachers were investigated.

Similarly, Shein has not shown that the experience of the
comparators in terms of their evaluations differed in any
meaningful way from Shein's.  Shein complains about her February
2014 evaluation, but the hearing officer found her guilty in
connection with that evaluation of both ineffective teaching and
of making inappropriate comments in the post-observation
conference.  Shein has not pled any facts to suggest that her
comparators had any relevant experience in this regard.
Although she need not plead a prima facie case of religious

discrimination, Shein must plausibly plead discriminatory animus.  This she has not done.

## II.  Age Discrimination

Shein brings a cause of action for age discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983.  She does not plead her cause of action under the Age Discrimination in Employment Act ("ADEA").  "To state a claim for an equal protection violation, [Shein] must allege that a government actor intentionally discriminated against [her] on the basis of race, national origin or gender."  Hayden v. Cty. of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).  Age is not a protected class under the Fourteenth Amendment's Equal Protection Clause.  See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000) (holding that the ADEA does not abrogate state sovereign immunity because it is broader than the rational basis test that applies to claimed age discrimination).

Shein's age discrimination claim is dismissed.  The imposition of a compressed schedule for the payment of a penalty is the only claimed instance of age discrimination in Shein's complaint.  A compressed schedule for garnishing Shein's paycheck -- imposed because of her anticipated retirement -- is not sufficient to plead a claim of age discrimination against

the defendants.[3]  Apart from any other deficiencies in the pleading of this claim, it was the hearing officer, not the defendants, who set the compressed garnishment schedule for her fine.

### III. Federal Retaliation Claims

Shein brings retaliation claims under both the First Amendment and Title VII.  To state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015) (citation omitted).  "As relevant here, the First Amendment protects speech uttered by an employee in his or her capacity as a citizen regarding a matter of public concern."  Smith v. Cty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015).  "[W]hether an employee's speech addresses a matter of public concern must be

---

[3] Indeed, it is an open question whether a § 1983 cause of action is available at all for age discrimination claims.  The vast majority of circuits that have considered this question have found that the ADEA's remedial scheme evinces a Congressional intent to displace § 1983 as a cause of action for age discrimination.  See Levin v. Madigan, 692 F.3d 607, 617 (7th Cir. 2012) (holding that the ADEA does not preclude a § 1983 action for age discrimination, but recognizing that it is the only circuit to so find); Hildebrand v. Allegheny Cty., 757 F.3d 99, 108 (3d Cir. 2014), cert. denied sub nom. Hildebrand v. Allegheny Cty., Pa., 135 S. Ct. 1398 (2015) (finding that the ADEA precludes a remedy under § 1983).

determined by the content, form, and context of a given statement, as revealed by the whole record." <u>Golodner v. Berliner</u>, 770 F.3d 196, 202 (2d Cir. 2014) (citation omitted). "The Supreme Court has defined a matter of public concern as one that relates to any matter of political, social, or other concern to the community." <u>Sousa v. Roque</u>, 578 F.3d 164, 170 (2d Cir. 2009) (citation omitted). "[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." <u>Id.</u> at 174 (citation omitted).

To state a claim for retaliation under Title VII, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against [her], (2) because [s]he has opposed any unlawful employment practice." <u>Vega</u>, 801 F.3d at 89-90 (citation omitted). The retaliation must be in response to a complaint about "any practice made an unlawful employment practice <u>by this subchapter</u>." 42 U.S.C. § 2000e-3(a) (emphasis added). In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII." <u>Kessler v. Westchester Cty. Dep't of Soc. Servs.</u>, 461 F.3d 199, 205 (2d Cir. 2006). Title VII protects against discrimination by employers based on "race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1)-(2).

An adverse employment action for a retaliation claim is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Vega, 801 F.3d at 90 (citation omitted).  "As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity."  Id.  A plaintiff can show "retaliatory purpose . . . indirectly by timing."  Id. (collecting cases). Unlike discrimination claims under Title VII, "the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action."  Id.; Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).  The elements are the same for a retaliation claim under § 1983, except that § 1983 requires state action.  Vega, 801 F.3d at 90.

Shein's First Amendment retaliation claim fails because she did not speak as a citizen on a matter of public concern. Rather, the letter was written in her private capacity to complain of her treatment in the workplace.  The plaintiff's argument that it was public speech with a personal motivation is unavailing.  The letter only addressed Shein's personal issues with her employment.

Shein's Title VII retaliation claim also fails because the only discrimination to which the January 2014 letter arguably

refers is age discrimination.  Age discrimination is not prohibited by Title VII, and therefore Shein cannot allege retaliation under Title VII based on her complaints about possible age discrimination.  The rest of the letter concerns workplace safety and other issues related to Shein's supervision; it does not reference discrimination based on her religion or another characteristic protected under Title VII. Shein does not plead a cause of action for retaliation under the ADEA.

### IV.  Procedural Due Process Claim Under 42 U.S.C. § 1983

The Due Process Clause of the Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law."  "A Fourteenth Amendment due process claim entails a two-part inquiry to first determine whether plaintiff was deprived of a protected interest, and, if so, what process was his due."  Rosu v. City of New York, 742 F.3d 523, 526 (2d Cir. 2014) (citation omitted).  "[A] tenured public employee is entitled to a hearing prior to being terminated."  Ciambriello v. Cty. of Nassau, 292 F.3d 307, 319 (2d Cir. 2002) (citation omitted).  Due process also requires notice and the opportunity to be heard before demotion.  Id. at 321.

The plaintiff's procedural due process claim is dismissed. She does not allege that the procedures at the § 3020-a

disciplinary hearings themselves deprived her of due process
before being subject to discipline.  Instead, she claims that
Burns and the NYCDOE conducted inadequate investigations and
served Shein with charges that the defendants knew or should
have known were meritless.  Indeed, the plaintiff agrees that
"generally speaking, the disciplinary procedures outlined in
Education Law § 3020-a satisfy the requirements under the Due
Process Clause."

### V.   State Law Claims

Shein brings the following state law claims under the
NYSHRL and NYCHRL: (1) religious discrimination; and (2)
retaliation for the January 2014 letter arguably referring to
age discrimination.  As discussed below, the state and city law
claim for religious discrimination are dismissed.  Shein's
retaliation claim under the NYSHRL is also dismissed.  The Court
declines to exercise supplemental jurisdiction over NYCHRL
retaliation claim because it is the only claim that remains in
this suit.

Supplemental jurisdiction exists over state law claims
"that are so related to claims in the action within [the
Court's] original jurisdiction that they form part of the same
case or controversy under Article III of the United States
Constitution," 28 U.S.C. § 1367(a).  In other words, federal
courts may assert supplemental jurisdiction over claims that

"derive from a common nucleus of operative fact."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).  To decide whether to exercise supplemental jurisdiction, the court must weigh "the traditional 'values of judicial economy, convenience, fairness, and comity.'"  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  Here, convenience and judicial economy weigh heavily in favor of resolving the straightforward claims that can be resolved as part of this motion to dismiss.

Discrimination and retaliation claims under the NYSHRL and NYCHRL are analyzed under different frameworks.  NYSHRL claims are analyzed under the same rubric as their federal counterparts.  See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (race discrimination); Mandell v. Cnty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (religious discrimination).  NYCHRL claims are analyzed under broader standards.

The NYSHRL prohibits an employer from discriminating against an employee "because of an individual's age [or] creed." N.Y. Exec. Law § 296(1)(a).  Moreover, the NYSHRL provides that it is unlawful for an employer "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."  Id. § 296(7).  Because the basis

of Shein's retaliation claim is a letter referencing her age, the appropriate federal statute to which to compare Shein's cause of action for retaliation under the NYSHRL is the ADEA. The framework for analyzing a claim of retaliation under Title VII and the ADEA is the same.  Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012).  As discussed above, an employee alleging retaliation under the NYSHRL therefore must plausibly plead that participation in a protected activity (opposing discrimination) was a but-for cause of an adverse employment action.  Vega, 801 F.3d at 90; Nassar, 133 S. Ct. at 2523.  This requires a plaintiff to plead that "the adverse action would not have occurred in the absence of the retaliatory motive."  Vega, 801 F.3d at 91 (citation omitted).

NYCHRL discrimination and retaliation claims must be analyzed "separately and independently from any federal and state law claims, construing [the NYCHRL's] provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 75 (2d Cir. 2015) (citation omitted).  "[I]nterpretations of state and federal civil rights statutes can serve only as a floor below which the NYCHRL cannot fall."  Id. (citation omitted); Williams v. New York Hous. Auth. 872 N.Y.S.2d 27, 33 (1st Dep't 2009) (emphasizing that the NYCHRL's standard for a successful retaliation claim is broader

than Title VII and therefore renders a greater range of
retaliatory conduct actionable than federal law).  "[E]ven if
the challenged conduct is not actionable under federal and state
law, federal courts must consider separately whether it is
actionable under the broader New York City standards."  Velazco
v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir. 2015)
(citation omitted).

Although the standard for pleading and proving
discrimination under the NYCHRL is more permissive, a plaintiff
still must adequately allege that "the conduct is caused at
least in part by discriminatory . . . motive."  Mihalik v.
Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 113 (2d
Cir. 2013); see Llanos v. City of New York, 10 N.Y.S.3d 870 (1st
Dep't 2015) (a "plaintiff's failure to adequately plead
discriminatory animus is fatal to her claim of" discrimination
under the NYCHRL).  Courts consider the "totality of the
circumstances" and the "overall context in which the challenged
conduct occurs" in order to discern whether a cause of action is
available under the NYCHRL.  Mihalik, 715 F.3d at 113.

Shein's Title VII religious discrimination claim is
dismissed.  Therefore, her NYSHRL claim for religious
discrimination is also dismissed because it parallels the
federal law claim.  Moreover, her NYCHRL claim for religious
discrimination must be dismissed.  To plead the existence of

25

discriminatory animus, Shein relies solely on her descriptions of the experiences of her identified comparators.  From her list of comparators, Shein asserts there is a basis from which to infer that she was treated in a discriminatory manner when given an ineffective rating in February 2014, and when removed from the classroom in March 2014.  But, Shein has not pleaded that these coworkers had any similar experiences that were relevant to Shein's.  Asserting that each of these comparators was also investigated for misconduct and not removed from the classroom while being investigated is simply not enough.  Like her comparators, Shein was not removed from the classroom while the various charges against her were being investigated; Shein was only removed after formal disciplinary charges were filed. Shein has not pointed to any comparator who was allowed to remain in the classroom after formal disciplinary charges were filed against the teacher.  As for the negative performance evaluation, an independent hearing officer found Shein guilty of deficient teaching in connection with the February 2014 observation; Shein makes no assertion that a hearing officer found any of her coworkers guilty of any instance of ineffective teaching.  Although the standard of the NYCHRL is broader than the state and federal law standards, and therefore must be analyzed separately, Shein has not pled a plausible claim of

discriminatory intent based on her religion even under that more remedial statute.

Shein has also not pled sufficient facts to make her NYSHRL retaliation claim plausible.  She has not plausibly pleaded that her arguable complaint of age discrimination in the January 2014 letter was a but-for cause of the defendants' adverse actions against her.  The Supreme Court recently held that a traditional application of but-for causation governs retaliation claims under Title VII and the ADEA.  Thus, Shein would have to plead plausibly that "the harm would not have occurred in the absence of" her January 2014 letter.  Nassar, 133 S. Ct. at 2525 (citation omitted).

The retaliatory actions of which she complains are the assignment of an ineffective rating in February 2014, the filing of formal disciplinary charges in February 2014, and her removal from the classroom in March 2014.  Shein relies on the timing of each of these actions, coming as they do on the heels of her January 2014 letter, as the sole basis from which to infer retaliatory intent and but-for causation.

This she cannot do for several reasons.  First, Shein admits in her complaint that the investigation of her conduct that led to the filing of the formal disciplinary charges against her in February and her removal from the classroom after that filing began months before her attorney sent the January

2014 letter making its passing reference to remarks about her age.  Indeed, the complaint alleges that Burns began his attempts to fire Shein as early as January 2012.  Thus, where, as here, "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001).

That leaves the ineffective rating, given in February 2014, as the sole basis from which to infer that the defendants retaliated against Shein because she had purportedly complained of age discrimination in the January 2014 letter.  Because a hearing officer concluded that Shein had indeed engaged in ineffective teaching in February and that the rating was warranted, Shein has also failed to plead a plausible claim of but-for causation in this regard.

That leaves just one claim in this lawsuit.  It is the claim brought under the NYCHRL for retaliation based on the alleged complaint about age discrimination in the January 2014 letter.  The Court declines to exercise supplemental jurisdiction over the NYCHRL retaliation claim, which must be analyzed under the broader standards required by the NYCHRL.

## Conclusion

The defendants' October 1, 2015 motion to dismiss is granted in part.  All of Shein's claims are dismissed except for her retaliation claim under the NYCHRL based on her January 2014 letter.  The Court declines to exercise supplemental jurisdiction over this remaining claim.  The Clerk of Court shall close the case.


Dated:    New York, New York
          February 18, 2016


                          _____
                                 DENISE COTE
                        United States District Judge